## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASMINE HILL, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-3826 |
| | : | |
| PHILADELPHIA HOUSING | : | |
| AUTHORITY, *et al.*, | : | |
| Defendants. | : | |

<u>**MEMORANDUM**</u>

**PEREZ, J.**                                                           **JULY  31, 2025**

Plaintiff Jasmine Hill filed this lawsuit against the Philadelphia Housing Authority ("PHA") and the U.S. Department of Housing and Urban Development ("HUD") based on allegations that she and her minor daughter were exposed to lead when living in a PHA-subsidized home.  (ECF No. 2 ("Compl.").)  Hill seeks leave to proceed *in forma pauperis*.  For the following reasons, the Court will grant Hill leave to proceed *in forma pauperis* and dismiss her Complaint without prejudice to amendment.

**I.      FACTUAL ALLEGATIONS**[1]

Hill identifies herself as an "African-American single mother, and housing program participant" living in a "PHA-subsidized unit" in Philadelphia.[2]  (Compl. at 4-5.)  Hill alleges

---

[1] The following allegations are taken from the Complaint and exhibits attached to the Complaint. The Court adopts the pagination supplied to the Complaint by the CM/ECF docketing system.

[2] "PHA provides rental assistance to low-income families in the private rental market through the Housing Choice Voucher Program, which is funded by the U.S. Department of Housing and Urban Development (HUD).  The program, formerly known as Section 8, was created by the Housing and Community Development Act of 1974, as amended." https://www.pha.phila.gov/housing/housing-choice-voucher/ (last visited July 28, 2025).  The Complaint implies that Hill is a participant in the Housing Choice Voucher Program living at a privately owned property in Philadelphia.

that she and her child were "exposed to hazardous conditions including lead-based paint" while living at the property, where she still resides. (*Id.*) In particular, she notes that her child has "elevated blood lead levels," which it appears she learned following an October 2024 blood test, (*id.*; *see also id.* at 12-13), and that a risk assessment confirmed the presence of hazardous levels of lead in the unit, (*id.* at 5). Documents attached to the Complaint reflect that a lead-based paint investigation conducted for the PHA on February 28, 2025, and reported to the PHA in March, confirmed the presence of "lead-based paint and potential lead exposure hazards at the subject property" that pose "an immediate and ongoing threat to current and future occupants— especially children." (*Id.* at 17, 20-91.)

Hill avers that HUD failed to timely investigate the issues at the property, and that her "complaints and requests for repairs have been ignored or delayed." (*Id.* at 5.) A letter attached to the Complaint dated April 8, 2025 and addressed to the property owner, states that the unit still did not meet PHA housing standards following another PHA inspection on April 7, 2025, and that PHA would accordingly withhold rent payments beginning the next month and issue Hill a voucher to search for a new unit. (*Id.* at 10-11.) Hill alleges that she sought a "portability transfer" from the PHA on May 13, 2025, but her transfer request was denied.[3] (*Id.* at 6.) A copy of a letter Hill received from PHA dated June 11, 2025, states that a PHA inspector again found that her current housing unit does not meet PHA standards and explains that Hill could maintain her housing voucher if she moved to another unit before the voucher expired. (*Id.* at 9.)

---

[3] "'Portability' in the HCV program refers to the process through which the family can transfer or 'port' their rental subsidy when they move to a location outside the jurisdiction of the public housing agency (PHA) that first gave them the voucher when they were selected for the program. New families may not be able to port immediately; they may have to live in the jurisdiction of the initial PHA for a year before they can port. Initial PHAs may allow moves during this one-year period." https://www.hud.gov/helping-americans/housing-choice-vouchers-portability (last visited July 25, 2025) (emphasis omitted).

Although these documents suggest that she could use her voucher for another unit, Hill alleges that she was "retaliated against after reporting the issue, including threats of voucher removal." (*Id.*)  It is unclear when her voucher was allegedly threatened and by whom.

In this civil action, Hill asserts a claim for violation of the Fair Housing Act ("FHA") predicated on "discriminat[ion] against [her] by failing to maintain habitable housing and retaliat[ion] for protected complaints," and a claim under Title VI of the Civil Rights Act because she "experienced disparate treatment based on race, protected status, and socioeconomic condition."  (*Id.* at 5; *see also id.* at 3 (referring to Hill's "housing discrimination complaint").)  Hill seeks $75,000 in damages and "injunctive relief requiring remediation, enforcement, and non-retaliation."  (*Id.* at 5.)  She also seeks approval of the requested portability transfer and return of her full security deposit so that she can move to a new home that she has identified. (*Id.* at 6.)

## II.    STANDARD OF REVIEW

The Court grants Hill leave to proceed *in forma pauperis* because it appears that she does not have the ability to pay the fees to commence this case.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  To state a claim, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  At the screening stage, the Court accepts the facts alleged in the Complaint as true, draws all reasonable inferences in the plaintiff's favor, and asks only whether the complaint, liberally construed, contains facts sufficient to state a plausible claim.  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v.*

*Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*

## III.    DISCUSSION

The basis for Hill's claims under the FHA and Title VI is that she was discriminated against because of her race and socioeconomic status and retaliated against for complaining about the condition of her housing.[4]  "'The Fair Housing Act ('FHA'), passed by Congress as Title VIII of the Civil Rights Act of 1968, prohibits housing discrimination on the basis of, *inter alia,* race, gender, and national origin'—and, following the adoption of the FHAA in 1988, individuals with disabilities." *431 E. Palisade Ave. Real Est., LLC v. City of Englewood*, 977 F.3d 277, 283 (3d Cir. 2020) (quoting *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005)); *see also* 42 U.S.C. § 3604.  "The FHA can be violated by either intentional discrimination or if a practice has a disparate impact on a protected class." *Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mount Holly*, 658 F.3d 375, 381 (3d Cir. 2011); *see also Texas*

---

[4] HUD is not a proper defendant in this lawsuit because it is not subject to liability for damages under the FHA and Title VI and lacks the ability to provide the injunctive relief requested by Hill.  *See Tate v. Supervisor HUD*, No. 18-148, 2018 WL 3068542, at *5 (W.D. Pa. June 21, 2018) (explaining that HUD is not liable for damages under the FHA or Title VI and that "HUD is not responsible for the actual administration of the HCV program; rather, that responsibility falls to the local PHA"); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.").  In any event, any claims against HUD would fail for the same reasons they fail against the PHA as discussed below.

4

*Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 545 (2015) ("The Court holds that disparate-impact claims are cognizable under the Fair Housing Act."). "Generally, to prevail on a disparate treatment claim, a plaintiff must demonstrate that some discriminatory purpose was a 'motivating factor' behind the challenged action." *Cmty. Servs.*, 421 F.3d at 177.  In contrast, "a plaintiff bringing a disparate-impact claim challenges practices that have a 'disproportionately adverse effect on minorities' and are otherwise unjustified by a legitimate rationale." *Texas Dep't of Hous. & Cmty. Affs.*, 576 U.S. at 524 (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)).  Discrimination under the FHA includes failure to make repairs or delaying repairs if motivated by ones' membership in a protected class, including race. *See White v. Barbe*, 767 F. App'x 332, 334 (3d Cir. 2019) (*per curiam*) (citing 24 C.F.R. § 100.65(b)).  The other statute Hill cites, Title VI, prohibits discrimination based on race, color, or national origin by recipients of federal funding.  *See* 42 U.S.C. § 2000d; *see also Weir v. Univ. of Pittsburgh*, No. 22-3392, 2023 WL 3773645, at *3 (3d Cir. June 2, 2023) (*per curiam*) (to state a claim under Title VI, a plaintiff must allege that the "actions taken against him were taken under circumstances giving rise to an inference of discrimination"); *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 272 (3d Cir. 2014) ("Private individuals who bring suits under Title VI may not recover compensatory relief unless they show that the defendant engaged in intentional discrimination.").

   The FHA also prohibits retaliation against a person who makes a complaint in an FHA proceeding or against a person who reports a discriminatory housing practice to a housing provider or other authority.  *See Lloyd v. Presby's Inspired Life*, 251 F. Supp. 3d 891, 904 (E.D. Pa. 2017); *see also* 42 U.S.C. § 3617.  "To prevail on a § 3617 retaliation claim, a plaintiff must demonstrate that (1) she engaged in a protected activity; (2) the defendant subjected her to an

adverse action; and (3) a causal link exists between the protected activity and the adverse action." *Lloyd*, 251 F. Supp. 3d at 904. The regulations associated with § 3617 make clear that the section prohibits acts directed at individuals "because of" their membership in a protected class. 24 C.F.R. § 100.400(c)(2) (listing prohibited conduct to include "[t]hreatening, intimidating or interfering with persons in their enjoyment of a dwelling *because of* the race, color, religion, sex, handicap, familial status, or national origin of such persons" (emphasis added)). Title VI likewise prohibits retaliation for complaining about racial discrimination. *See Williams v. Pennsylvania State Univ.*, No. 23-3180, 2025 WL 971670, at *2 (3d Cir. Apr. 1, 2025) (*per curiam*) (discussing retaliation under Title VI); *Williams v. Pennridge Sch. Dist.*, 782 F. App'x 120, 125 (3d Cir. 2019) (stating, in the Title VI context, that "[i]n order to establish a retaliation claim, a plaintiff must show that she (1) engaged in constitutionally protected conduct, (2) suffered an adverse action at the hands of a public official, and (3) her constitutionally protected conduct was a substantial or motivating factor in the adverse action").

Hill's factual allegations do not support an inference that she was discriminated against based on her race or any other protected class, or that she was retaliated against for any protected activity. To the extent Hill alleges that she was discriminated against based on her socioeconomic status, she has not alleged a protected class that is entitled to protection under the FHA or Title VI. *See Dew v. S. Columbia Terrace, LLC*, 854 F. App'x 460, 462 (3d Cir. 2021) (*per curiam*) (affirming dismissal of FHA claim because source of income is not protected by the FHA); *Dejesus, v. Vicky*, No. 21-1403, 2021 WL 1546228, at *5 (E.D. Pa. Apr. 20, 2021) (allegations of discrimination based solely on status as a Section 8 voucher holder, and not based on membership in a statutorily protected class, fail). To the extent Hill alleges that she was discriminated against because of her race, she alleges this only in a conclusory fashion, because

she does not provide any factual basis for inferring that the time or manner in which the PHA and/or HUD handled her complaints about the condition of the unit related in any way to her race.  Accordingly, the Complaint fails to state a claim under the FHA or Title VI.  *See Mouzone v. New Jersey Motor Vehicle Comm'n*, No. 22-2886, 2023 WL 5624184, at *1 (3d Cir. Aug. 31, 2023) (*per curiam*) ("Nor did Mouzone state a viable claim under Title VI, for he did not allege facts demonstrating that he was discriminated against on the basis of his race, color, or national origin."); *Davis v. Rubin*, No. 22-1472, 2022 WL 3037254, at *2 (3d Cir. Aug. 2, 2022) (*per curiam*) (holding that plaintiff's allegations that she was evicted from section 8 housing after complaining of conflicts with neighbors and receiving "inconsistent information about how she could tender her months-belated security deposit" did not "reveal[] a plausible disability-based discrimination claim under the FHA"); *Wilson v. Hillsborough Twp. Constr. Dep't*, 779 F. App'x 969, 972 (3d Cir. 2019) (*per curiam*) ("[E]ven if Wilson could bring a claim under the FHA for defendants' licensing, inspection, and tax assessment decisions, her vague, conclusory speculations that those decisions were made for a discriminatory reason are insufficient to state a claim under the FHA."); *Fessler v. Sauer*, 455 F. App'x 220, 224 (3d Cir. 2011) (*per curiam*) (affirming dismissal of Title VI and FHA claims predicated on "bare allegation" of discrimination); *Alvarez v. HUD*, No. 22-3631, 2022 WL 17252193, at *3 n.7 (E.D. Pa. Nov. 28, 2022) ("For the same reasons that Alvarez's FHA claims fail, so do his claims under Title II and Title VI.  Alvarez has not alleged any discrimination on account of his membership in a protected class."); *Palencar v. Raijski*, No. 15-1189, 2016 WL 6908116, at *5 (M.D. Pa. Nov. 9, 2016) (explaining that plaintiff's allegations based on "a series of housing maintenance concerns" did not state a FHA claim because the FHA "does not[] . . . create some general federal cause of action governing landlord-tenant disputes."), *report and recommendation*

*adopted*, 2016 WL 6892841 (M.D. Pa. Nov. 23, 2016).  Nor does the Complaint state a disparate impact claim since Hill does not allege any facts, statistical or otherwise, from which the Court could conclude that the PHA has adopted practices that disproportionately impact African-Americans.  *See generally Texas Dep't of Hous. & Cmty. Affs.*, 576 U.S. at 542-44 (discussing standards for establishing a disparate impact claim); *Dew*, 854 F. App'x at 462 (rejecting FHA disparate impact claim based on undeveloped allegations).

Hill also has not alleged a plausible retaliation claim.  Although Hill complained about the condition of the property, the Complaint suggests that these requests for action concerned the presence of lead and/or the other conditions on the property that Hill sought to have corrected. Not only does the Complaint lack details about when Hill complained and to whom she complained, but nothing in the Complaint suggests that Hill's complaints to the PHA (or anyone else) concerned prohibited discrimination (as opposed to the condition of her unit).  Accordingly, the Complaint also fails to allege a plausible retaliation claim.  *See Pedro v. Hilton Worldwide, Inc.*, No. 24-CV-5725, 2025 WL 220023, at *7 (E.D. Pa. Jan. 16, 2025) ("Although the Complaint baldly describes the Defendants conduct as discriminatory and retaliatory, no facts support those accusations.  Accordingly, Pedro and Fisher have not stated a discrimination or retaliation claim under the FHA or § 1981 based on their ejectment from the Hilton."); *Kris v. Dusseault Fam. Revocable Tr. of 2017*, No. 18-566, 2019 WL 4647211, at *5 (D.N.H. Sept. 24, 2019) (explaining that "'protected activity' includes the filing of complaints with federal or local housing authorities, or even less formal means of protest, so long as the complaint is related to unlawful discrimination . . . [b]ut complaints to HUD or the local housing authority about general conditions of the apartment or mismanagement of the apartment complex are not"); *see also Bhombal v. Irving Indep. Sch. Dist.*, 809 F. App'x 233, 239 (5th Cir. 2020) (*per curiam*)

(affirming dismissal of title VI claim: "But this conclusory allegation, devoid of factual support, is not enough to give rise to a reasonable inference of retaliation.").  In sum, Hill's allegations of discrimination and retaliation are unsupported and do not state a plausible claim for race discrimination or retaliation under the FHA or Title VI.

## IV.     CONCLUSION

For the foregoing reasons, the Court will grant Hill leave to proceed *in forma pauperis* and dismiss her Complaint.[5]  Hill will be given leave to file an amended complaint in the event she can cure the defects in her claims.  An order follows, which provides further guidance as to amendment.

**BY THE COURT:**

**MIA R. PEREZ, J.**

---

[5] The Court cannot discern any other plausible federal claims against the named Defendants based on the allegations in the Complaint.