## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JASMINE HILL,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 25-CV-3826** |
| | : | |
| **PHILADELPHIA HOUSING** | : | |
| **AUTHORITY**, *et al.*, | : | |
| **Defendants.** | : | |

## MEMORANDUM

**PEREZ, J.**                                                      **OCTOBER 14, 2025**

Currently before the Court is an Amended Complaint filed by plaintiff Jasmine Hill against the Philadelphia Housing Authority ("PHA") and the U.S. Department of Housing and Urban Development ("HUD") based on allegations that she and her minor daughter have been subjected to unsafe conditions while living in PHA-subsidized homes. (ECF No. 7 ("Am. Compl.").) For the following reasons, the Court will dismiss the Amended Complaint for failure to state a claim.

## I.    FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY[1]

After granting Hill leave to proceed *in forma pauperis* in this case, the Court screened her Complaint—which asserted claims under Title VI of the Civil Rights Act and the Fair Housing Act ("FHA")—and dismissed it for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). *Hill v. Philadelphia Hous. Auth.*, No. 25-3826, 2025 WL 2180522, at *1 (E.D. Pa. July 31, 2025). The claims were dismissed because Hill's allegations about substandard

---

[1] The following allegations are taken from Hill's pleadings and exhibits, as well as the docket for this case. The Court adopts the pagination supplied to all *pro se* submissions by the CM/ECF docketing system.

housing conditions such as exposure to lead-based paint, did not "support an inference that she was discriminated against based on her race or any other protected class, or that she was retaliated against for any protected activity" in violation of the cited statutes. *Id.* at *3. In other words, Hill had not alleged discrimination or retaliation that would have been actionable under the statutes she relied upon in her Complaint. *See id.* The Court also observed that it was unable to "discern any other plausible federal claims against the named Defendants based on the allegations in the Complaint." *Id.* at *4 n.5.

The Court provided Hill with an opportunity to amend her Complaint, *id.*, which she has now done, again naming PHA and HUD as Defendants, (Am. Compl. at 4). According to the Amended Complaint, Hill participates in "housing programs administered by PHA under the oversight of HUD."[2] (*Id.* at 5.) Her initial Complaint concerned exposure to hazardous conditions at a property where she was then living on North Taylor Street in Philadelphia. (*See, e.g.*, Compl. at 10 (describing Hill's current address as the property being re-inspected)). In a cover letter included with her Amended Complaint, Hill noted that her amendment "adds additional factual allegations concerning unsafe and uninhabitable conditions at [her] second residence,"—a property on Jane Street in Philadelphia where she currently resides—"including

---

[2] "PHA provides rental assistance to low-income families in the private rental market through the Housing Choice Voucher Program, which is funded by the U.S. Department of Housing and Urban Development (HUD). The program, formerly known as Section 8, was created by the Housing and Community Development Act of 1974, as amended." https://www.pha.phila.gov/housing/housing-choice-voucher/ (last visited Sept. 15, 2025). Hill's pleadings suggest that she is a participant in the Housing Choice Voucher Program living at a privately owned property in Philadelphia.

repeated failed gas line repairs and multiple shut-offs by the gas company between September 2 and September 5, 2025."[3]  (Am. Compl. at 1, 4.)

Hill's Amended Complaint alleges that her landlord at the Jane Street property claimed to have completed repairs on August 29, 2025, but that when she returned to the property, she "discovered no hot water and continued leaks" and that the "gas had been illegally reconnected without inspection."  (*Id.* at 5.)  Hill's landlord "continued to withhold funds and failed to repair [the] hazardous conditions" even though the gas was again shut off, the gas company confirmed repairs were required, and a "supervisor inspection documented violations."  (*Id.*)  Thereafter, a new property management company made two additional attempts to fix the issue between September 2 and September 5, but was unable to do so, again requiring the gas to be shut off. (*Id.* at 5, 21.)  Hill alleges that as of September 5, the "[u]nsafe conditions persisted, leaving [her] and her children without safe housing."  (*Id.* at 5.)

Based on these allegations, Hill asserts a violation of the FHA.  (*Id.*)  She claims that the Defendants' conduct constitutes "housing discrimination and/or retaliation including failure to maintain safe and habitable housing and threats to housing benefits" in violation of that statute. (*Id.*)  The Court understands Hill to seek injunctive relief in the form of an "emergency housing voucher or hotel placement," a "[s]afety inspection and certification of any alternative unit offered," and "prompt communication of placement details and next steps," in light of the conditions to which she was subjected at both the North Taylor Street and Jane Street properties.

---

[3] In the Order providing leave to amend, Hill was informed that any amended complaint she filed must "state the basis for [her] claims against each defendant," and must "be a complete document that does not rely on the initial Complaint or other papers filed in this case to state a claim."  (ECF No. 6, ¶ 5.)  The Court also suggested that Hill "be mindful of the Court's reasons for dismissing the claims in her initial Complaint as explained in the Court's Memorandum" if she prepared an amended complaint.  (*Id.*)  Despite these instructions, she did not include any factual allegations specific to the North Taylor Street property in her Amended Complaint.

(*Id.* at 11.)  She claims her "[p]rior PHA complaints [were] ignored, causing homelessness and distress."  (*Id.* at 11.)

## II.    STANDARD OF REVIEW

Since Hill is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim.  To state a claim, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  At the screening stage, the Court accepts the facts alleged in the Amended Complaint as true, draws all reasonable inferences in the plaintiff's favor, and asks only whether the complaint, liberally construed, contains facts sufficient to state a plausible claim.  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants."  *Id.*

## III.    DISCUSSION

Hill has again failed to state a claim under the FHA because nothing in her Amended Complaint suggests that she was subjected to the hazardous conditions at issue due to her membership in a protected class or in retaliation for a protected activity.[4]  As previously

---

[4] As the Court previously explained in dismissing Hill's initial Complaint, *Hill*, 2025 WL 2180522, at *2 n.4, HUD is not a proper defendant in this lawsuit because it lacks the ability to provide the injunctive relief requested by Hill.  *See Tate v. Supervisor HUD*, No. 18-148, 2018

explained, *Hill*, 2025 WL 2180522, at *2-3, "'[t]he Fair Housing Act ('FHA'), passed by Congress as Title VIII of the Civil Rights Act of 1968, prohibits housing discrimination on the basis of, *inter alia,* race, gender, and national origin'—and, following the adoption of the FHAA in 1988, individuals with disabilities." *431 E. Palisade Ave. Real Est., LLC v. City of Englewood*, 977 F.3d 277, 283 (3d Cir. 2020) (quoting *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005)); *see also* 42 U.S.C. § 3604. "The FHA can be violated by either intentional discrimination or if a practice has a disparate impact on a protected class." *Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mount Holly*, 658 F.3d 375, 381 (3d Cir. 2011); *see also Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 545 (2015) ("The Court holds that disparate-impact claims are cognizable under the Fair Housing Act."). "Generally, to prevail on a disparate treatment claim, a plaintiff must demonstrate that some discriminatory purpose was a 'motivating factor' behind the challenged action." *Cmty. Servs.*, 421 F.3d at 177. In contrast, "a plaintiff bringing a disparate-impact claim challenges practices that have a 'disproportionately adverse effect on minorities' and are otherwise unjustified by a legitimate rationale." *Texas Dep't of Hous. & Cmty. Affs.*, 576 U.S. at 524 (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)). Discrimination under the FHA includes failure to make repairs or delaying repairs if motivated by ones' membership in a

---

WL 3068542, at *5 (W.D. Pa. June 21, 2018) (explaining that "HUD is not responsible for the actual administration of the HCV program; rather, that responsibility falls to the local PHA. Therefore, any injunctive relief that Plaintiff might seek in his quest to obtain suitable housing would necessarily have to be directed at the local PHA rather than HUD."); *Emrit v. Marion Cnty. Hous. Auth. (MCHA)*, No. 16-1854, 2017 WL 743882, at *3 (D. Or. Feb. 23, 2017) ("[T]he mere fact that HUD funds a PHA does not result in HUD liability for the PHA's housing decisions."). In any event, any claims against HUD would fail for the same reasons they fail against the PHA as discussed below.

protected class. *See White v. Barbe*, 767 F. App'x 332, 334 (3d Cir. 2019) (*per curiam*) (citing 24 C.F.R. § 100.65(b)).

The FHA also prohibits retaliation against a person who makes a complaint in an FHA proceeding or against a person who reports a discriminatory housing practice to a housing provider or other authority. *See Lloyd v. Presby's Inspired Life*, 251 F. Supp. 3d 891, 904 (E.D. Pa. 2017); *see also* 42 U.S.C. § 3617. "To prevail on a § 3617 retaliation claim, a plaintiff must demonstrate that (1) she engaged in a protected activity; (2) the defendant subjected her to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." *Lloyd*, 251 F. Supp. 3d at 904. The regulations associated with § 3617 make clear that the section prohibits acts directed at individuals "because of" their membership in a protected class. 24 C.F.R. § 100.400(c)(2) (listing prohibited conduct to include "[t]hreatening, intimidating or interfering with persons in their enjoyment of a dwelling *because of* the race, color, religion, sex, handicap, familial status, or national origin of such persons" (emphasis added)).

Since nothing in the Amended Complaint ties the conditions of the properties where Hill lived or is living to her membership in a protected class, she cannot state a discrimination claim under the FHA. *See Davis v. Rubin*, No. 22-1472, 2022 WL 3037254, at *2 (3d Cir. Aug. 2, 2022) (*per curiam*) (holding that plaintiff's allegations that she was evicted from section 8 housing after complaining of conflicts with neighbors and receiving "inconsistent information about how she could tender her months-belated security deposit" did not "reveal[] a plausible disability-based discrimination claim under the FHA"); *Wilson v. Hillsborough Twp. Constr. Dep't*, 779 F. App'x 969, 972 (3d Cir. 2019) (*per curiam*) ("[E]ven if Wilson could bring a claim under the FHA for defendants' licensing, inspection, and tax assessment decisions, her vague,

conclusory speculations that those decisions were made for a discriminatory reason are insufficient to state a claim under the FHA."); *Fessler v. Sauer*, 455 F. App'x 220, 224 (3d Cir. 2011) (*per curiam*) (affirming dismissal of FHA claims predicated on "bare allegation" of discrimination); *Palencar v. Raijski*, No. 15-1189, 2016 WL 6908116, at *5 (M.D. Pa. Nov. 9, 2016) (explaining that plaintiff's allegations based on "a series of housing maintenance concerns" did not state a FHA claim because the FHA "does not[] . . . create some general federal cause of action governing landlord-tenant disputes."), *report and recommendation adopted*, 2016 WL 6892841 (M.D. Pa. Nov. 23, 2016).  Similarly, any retaliation claims under the FHA are not plausible because Hill does not describe any complaints that would constitute protected activity under the FHA, nor does she describe any factual basis from which a retaliatory motive can be inferred.  *See Pedro v. Hilton Worldwide, Inc.*, No. 24-5725, 2025 WL 220023, at *7 (E.D. Pa. Jan. 16, 2025) ("Although the Complaint baldly describes the Defendants conduct as discriminatory and retaliatory, no facts support those accusations. Accordingly, Pedro and Fisher have not stated a discrimination or retaliation claim under the FHA or § 1981 based on their ejectment from the Hilton."); *Kris v. Dusseault Fam. Revocable Tr. of 2017*, No. 18-566, 2019 WL 4647211, at *5 (D.N.H. Sept. 24, 2019) (explaining that "'protected activity' includes the filing of complaints with federal or local housing authorities, or even less formal means of protest, so long as the complaint is related to unlawful discrimination . . . [b]ut complaints to HUD or the local housing authority about general conditions of the apartment or mismanagement of the apartment complex are not").  In sum, Hill's allegations of discrimination and retaliation do not state a plausible FHA claim.

Further, as before, the Court cannot discern any other basis for a plausible federal claim from the facts alleged in the Amended Complaint.  Notably, HUD's enabling statute and

regulations have generally been found not to confer a private right of action. *See Henry v. City of Erie*, 728 F.3d 275, 281 (3d Cir. 2013) ("Federal appellate courts that have addressed the issue have held that the Housing Act does not create a private right to housing of a particular condition or a private cause of action to enforce any such right." (footnote omitted)); *Banks v. Dallas Hous. Auth.*, 271 F.3d 605, 611 (5th Cir. 2001) (holding that a right to "decent, safe, and sanitary" housing was not enforceable: "As a general rule, Congress does not intend to create a private right of action where a statute is phrased as a directive to federal agencies engaged in the distribution of federal funds." (internal quotations omitted)); *Reynolds v. PBG Enters., LLC*, No. 10-4373, 2011 WL 2678589, at *9 (E.D. Pa. July 6, 2011) ("Although tenants such as plaintiffs are certainly beneficiaries of the inspections and federal standards (as is the Secretary), the statutory provisions fall well short of the clear and unambiguous rights-conferring language necessary to create personal rights enforceable either through § 1983 or through a private right of action."). Nor do Hill's allegations suggest any other basis for a federal claim. *See Henry*, 728 F.3d at 284-85 (holding that approval and subsidization of private apartment that failed to comply with Section 8's quality standards did not amount to a state created danger claim: "licensure will often be too far removed from the ultimate harm to permit liability under § 1983"); *see also D.M. ex rel. Ray v. Philadelphia Hous. Auth.*, 613 F. App'x 187, 190 (3d Cir. 2015) (rejecting state created danger claim against housing authority where Section 8 tenant alleged exposure to lead paint).

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss Hill's Amended Complaint. Hill will not be given leave to file a second amended complaint because she has been unable to cure the defects in her claims despite being provided the relevant law. *See Jones v. Unknown D.O.C. Bus*

*Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story").  An order follows, which dismisses this case.  *See* Fed. R. Civ. P. 58(a).

**BY THE COURT:**

**MIA R. PEREZ, J.**